United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KRISTINE A MORILLAS,                    No    C 07-4165 VRW

            Plaintiff,                        ORDER

        v

MICHAEL J ASTRUE,
Commissioner of Social Security,

            Defendant.
_____/

        Plaintiff Kristine Morillas brings this action under 42
USC § 405(g), challenging the final decision of the Social Security
Administration (SSA) denying her application for supplemental
security income (SSI).  The parties have filed cross-motions for
summary judgment.  Based on a careful review of the administrative
record under the applicable law, the court DENIES plaintiff's
motion for summary judgment and GRANTS defendant's motion for
summary judgment.

//

I

A

Morillas was born on October 29, 1953.  She completed high school and worked as a bartender from approximately 1984 to 2000.  Administrative Record (AR) 102, 107 (Doc #10).  After she stopped working, Morillas took classes toward becoming a medical assistant.  AR 138.  She is 5'4" tall and weighed 231 pounds at the time of her hearing.  AR 360.  She alleges that she has been unable to work since February 27, 2001 because of degenerative disc disease of the cervical spine, chronic neck and back pain, osteoarthritis, obesity, hypertension, carpal tunnel syndrome (CTS), a wrist sprain and bilateral knee and foot pain.  AR 97, 137.  Morillas's medical records show that she is allergic to acetaminophen, an ingredient in Vicodin, and to codeine phosphate. AR 206, 305.

On February 26, 2001, Morillas saw Dr Devendra Chhatre, MD at Kaiser Permanente who noted symptoms of left neck and upper back pain, bilateral wrist pain which was more prominent in the left wrist and hand paresthesias.  AR 202.  Dr Chhatre recommended wrist splints at night, physical therapy, muscle relaxant medication and work modifications.  AR 201.  In October 2001, Dr Chhatre noted Tinel's and carpal compression tests as "faintly positive to the left."  AR 175.

On March 5, 2001, Morillas's physical therapist reported that physical therapy had improved her condition and that she had good cervical and bilateral shoulder range of motion, improved left wrist range of motion and increased left grip.  AR 198.  In June 2001, a magnetic resonance imaging (MRI) scan of her cervical spine

2

United States District Court

For the Northern District of California

showed mild degenerative disc disease between C5-6 and C6-7 with no evidence of central canal stenosis.  AR 182.

On May 6, 2002, Dr B Ravi Nayak, MD, provided the first of four different medical assessments of Morillas's residual functional capacity (RFC)——a physical RFC evaluation in the context of Morillas's claim for worker's compensation.  AR 235-39.  Dr Nayak reported: normal range of motion in the neck, shoulders, elbows, fingers and ankles (AR 237-38); slight tenderness over the left upper trapezius muscle, but no trigger points or muscle spasm, no atrophy of the upper extremities and no motor weakness or sensory or reflex loss (AR 237); tenderness over both wrists, but normal range of motion and slight tenderness over the arch of the left foot (AR 238).  Dr Nayak's review of nerve conduction studies only found "soft findings" but "no symptoms" of CTS and a loss of grip strength ——34% in one hand, 40% in the other.  AR 236, 239.  He found that a Tinel's test was negative and though a Phalen's test was positive, the little finger was involved, which is inconsistent with a positive Phalen's test.  AR 237.  Dr Nayak diagnosed cervical myofascial pain syndrome, bilateral CTS in remission, bilateral wrist tendinitis and chronic left foot strain.  AR 238.  He assessed no work restrictions regarding the left foot but recommended no prolonged bending of the neck, no repetitive overhead work on the left side, no heavy lifting and no "forcible gripping" or repetitive manipulation.  AR 238-39.  While Morillas claimed she could only lift ten pounds, Dr Nayak wrote that he suspected that she could lift more.  AR 239.

In September 2004, Dr Michael Louie, MD at Kaiser Permanente who had first treated Morillas in May 2000 (AR 212),

3

United States District Court
For the Northern District of California

1  approved Morillas's request for a Department of Motor Vehicles

2  Disabled Person Parking Placard.  AR 153.  In August 2005, after

3  Morillas complained to Dr Louie of ankle weakness with toe

4  numbness, he ordered a MRI exam of Morillas's lumbar spine that

5  revealed no evidence of disc herniation or spinal stenosis.  AR

6  336.

7      In March 2005, at the request of the SSA, consultative

8  physiatrist Dr L Neena Madireddi, MD examined Morillas at the Bay

9  View Medical Clinic.  AR 248-58.  Dr Madireddi diagnosed Morillas

10 with cervical and lumbar pain, chronic left knee and foot pain and

11 morbid obesity.  AR 248-50.  Dr Madireddi opined that Morillas

12 could:  stand and walk cumulatively for at least four hours; sit

13 cumulatively for at least six hours; lift ten pounds frequently and

14 twenty pounds occasionally and kneel, climb and balance without

15 restriction.  AR 249.  Dr Madireddi stated that Morillas should

16 avoid overhead reaching and lifting and repetitive stooping,

17 crouching and crawling activities because of back pain.  AR 249.

18     In April 2005, also at the request of the SSA,

19 consultative physician Dr Mark Tambellini completed Morillas's

20 second RFC evaluation.  AR 251-58.  Dr Tambellini gave a primary

21 diagnosis of cervical and lumbar pain and strain and a secondary

22 diagnosis of fibromyalgia.  AR 251.  He opined that Morillas could

23 stand and walk about six hours in an eight-hour workday and lift

24 twenty pounds occasionally and ten pounds frequently.  AR 252.  Dr

25 Tambellini stated, however, that Morillas should avoid overhead

26 reaching and lifting and could only occasionally climb, stoop,

27 kneel, crouch or crawl.  AR 253-54.  Dr Tambellini noted no

28 limitations in handling or fingering.  AR 254.

4

1      In April 2006, after the SSA had denied Morillas's
2  application for SSI, Dr Luis Folan, MD from the Palo Alto Medical
3  Foundation examined Morillas for the first time.  AR 320-26.  She
4  presented with significant pain and swelling in the right knee.  He
5  noted Morillas's history of problems with her left knee.  AR 322.
6  Because of pain and swelling in the right knee, he ordered a MRI
7  exam of the knee, suggested weight loss and referred Morillas to
8  orthopedist Dr Raad Andrew Al-Shaikh, MD.  Id.  Dr Al-Shaikh's
9  April 14, 2006, examination found normal range of motion and
10 strength in the knee with some tenderness.  AR 318.  The MRI exam
11 found a grade two sprain or partial tear involving the medial
12 rentinaculum, but no evidence of meniscal tear (which would have
13 severely restricted motion of the knee and required surgery for
14 treatment).  AR 290.  The MRI exam also found a "presumed" ganglion
15 cyst in the posterior of the knee, but it was "not completely
16 evaluated."  Id.

17     In June 2006, Morillas again sought treatment with Dr
18 Folan who noted that Morillas had started working out at the gym
19 and recommended further weight loss as a way to decrease her joint
20 pain, which he thought was "mostly osteoarthritic in nature."  AR
21 304.  Dr Folan offered to refer Morillas to the physical medicine
22 department for her back pain, but Dr Folan reported that Morillas
23 was "still contemplating whether or not seeing them would make any
24 difference and will continue with her current exercise regimen."
25 AR 305.  After Morillas fell on her right arm and wrist in July
26 2006, Dr Folan diagnosed a probable sprain (confirmed by x-ray) and
27 noted decreased range of motion in her elbow but normal range of
28 motion in her wrist.  AR 300-01.  When Morillas saw Dr Folan again

United States District Court
For the Northern District of California

in July 2006 for a thumb fungal infection, he reviewed "some of the patient's health care maintenance issues," and in that context noted no musculoskeletal problems.  AR 297.

On August 27, 2006, Dr Folan completed a physical RFC questionnaire, the third in Morillas's record, in which he reported diagnoses of osteoarthritis, obesity, hypertension, renal insufficiency and dermatophytosis of the nail.  AR 340-49.  He opined that Morillas could walk one city block without rest or severe pain, could sit for twenty minutes at a time and for a total of two hours in an eight-hour workday, could stand and walk for ten minutes about every fifteen minutes during an eight-hour workday and required a job that permitted shifting positions at will and unscheduled breaks.  AR 341-42.  He estimated that Morillas could: carry less than ten pounds occasionally; rarely crouch or squat and never stoop or climb.  AR 342-43.  He assessed significant limitations reaching, handling and fingering.  AR 343.

In August 2006, orthopedist Dr Barry Rose, MD, on referral from Dr Folan, examined Morillas's right wrist and left knee.  AR 282-87.  Morillas acknowledged that pain, numbness and tingling in her wrist had "quieted down" and Dr Rose noted that her knee was "slowly improving."  AR 285-86.  He noted full range of motion in the wrist and fingers, but diagnosed persistent knee pain and discomfort, chondromalacia patella post medial collateral ligament (MCL) sprain and osteochondrosis of the medial femoral condyle, i e, a loss of blood supply to the bone.  AR 285.  Dr Rose also noted positive Tinel's and Phalen's tests for CTS.  Id.

On September 8, 2006, Dr Louie completed the fourth physical RFC questionnaire in Morillas's record in a manner nearly

**United States District Court**

For the Northern District of California

identical to Dr Folan's.  AR 345-49.  The same forms were used, presumably supplied by Morillas's legal counsel, and nearly identical responses filled in.  Id.  Dr Louie reported diagnoses of:  chronic neck and back pain; CTS; knee osteoarthritis; tendinitis of the feet and trouble sleeping.  AR 345.  He indicated that Morillas had "constant pain" affecting the neck, back and knee, along with numbness of the hands.  Id.  He opined that Morillas could walk less than one city block without rest or severe pain, could sit only five minutes at a time and less than two hours in an eight-hour workday, could stand ten minutes at a time and less than two hours in an eight-hour workday and required a job that permitted shifting positions at will and unscheduled breaks.  AR 346-47.  He estimated that Morillas could: lift less than ten pounds occasionally; occasionally look down; rarely stoop, crouch or squat and never climb ladders or stairs.  AR 347-48.  But he assessed no significant limitations in reaching, handling or fingering.  AR 348.

**B**

On January 28, 2005, Morillas applied for SSI alleging disability since February 27, 2001 due to pain in the lower back, neck, hands and foot and fibromyalgia.  AR 27.  Morillas was referred for the above-described physical examinations with Drs Madireddi and Trambellini, whose reports were sent to the SSA for review in connection with her application.

On May 6, 2005, the SSA sent notification that Morillas did not qualify for SSI, stating, inter alia, that "your condition is not severe enough to keep you from working."  AR 27-31.  After

**7**

the SSA denied Morillas's request for reconsideration, she requested a hearing before an ALJ.  AR 36-43.

At the September 27, 2006 hearing, Morillas, represented by her counsel Betty Herrera, described her past work experience and her alleged disabilities.  AR 358-411.  Morillas testified that she had not worked for the last five years.  AR 361.  She explained that while working as a bartender, she "stocked the bar with cases of beer, changed the kegs of beer, poured cocktails, supervised the cocktail waitresses * * *, worked a cash register, did the banking, * * * took inventory of the liquor * * * sold every night, put the bottles in a garbage can and put them on a dolly and carried them out to the garbage container * * * every night."  AR 362.

Morillas went on to describe her ailments.  She stated that as a bartender she used a blender and bent her neck frequently which caused her to develop CTS and "pinched a nerve in her neck." AR 362.  She stated, "My back pain is the worst because I can't sit up.  I have to keep moving.  It's just——it's unbearable."  AR 364. Using a ten-point scale, with ten being the worst pain imaginable, Morillas described her back pain as a ten, her neck pain as a ten, her hand pain from a five to seven and her knee pain as a seven. AR 372-74.  She stated that she could only sit for "between like five and ten minutes usually because I have two cysts on my right leg and I have to stand up because of my back."  AR 366.  She also claimed to be able to lift only one pound without difficulty.  AR 367.  Morillas stated that she took 800 milligrams of ibuprofen (Motrin) three times a day, pentazocine lactate (Talwin) once a day at bedtime or when she was "really hurting," which occurred three or four times a month and cyclobenzaprine (Flexeril) when she had

United States District Court
For the Northern District of California

spasms.  AR 368.  She stated that she was in "too much pain" to be able to work for the last five years or take more than one class at a medical assistant training school.  AR 363.

Morillas then described difficulty with daily activities like doing household chores and taking care of personal needs, but stated she was still able to do them to a limited extent.  AR 375-79.  She could do dishes or vacuum for only about five minutes before needing to stop and needed two hours to shower because of neck pain.  AR 372, 376-77.  She stated that buttoning her pants was difficult because of CTS.  AR 377.  Morillas also stated that her pain caused her to wake up during the night.  AR 379.

Following Morillas's testimony, the medical expert (ME), Dr Sherry Sonka-Maarek, MD, who is board-certified in Physical Medicine and Rehabilitation and Spinal Cord Injury Medicine, opined that Morillas's medical records did not contain evidence of level-ten pain.  AR 383.  Dr Sonka-Maarek stated, "The objective evidence does not support her complaints" because the evidence shows only "minimal to mild problems."  AR 389.  In her review of the record, she did not "see a confirmed diagnosis of [a] pinched nerve."  AR 382.  She noted that Morillas's previous episode of CTS in 2001 was minimal, that it could not have gotten any worse since Morillas had not worked for the last five years and that she was not sure if Morillas was "ever fully given a solid diagnosis of carpal tunnel."  AR 384-85.  Dr Sonka-Maarek described Morillas's CTS as "questionable" and stated that the medical records provided "inconsistent" findings of CTS.  AR 386, 392.  She stated that MRI exams only showed minimal degenerative disk disease of the cervical spine and no disease in the lumbar spine.  AR 385-86.  Dr Sonka-

United States District Court
For the Northern District of California

Maarek testified to the presence of "signs of exaggeration" in Morillas's complaints and stated that if she were Morillas's treating physician, "I would be giving her stronger pain medications, and I would be trying to be more aggressive in the treatment."  AR 397-98.  At the end of her testimony, she noted that the medications Morillas was taking "cause cognitive side effects."  AR 397.

Next, vocational expert (VE) Susan Creighton-Clavel testified that Morillas carried out various job functions in her capacity as a bartender including bartending, stocking, cashiering, banking, accounting, security, janitorial work and waitressing.  AR 401-02.  The ALJ posed a hypothetical to the VE describing a "younger individual"——i e, a person under fifty——with the same education and vocational background as Morillas who could "do light work with no overhead lifting, no overhead reaching, occasional stooping, kneeling, crouching and crawling, and occasional climbing" and asked whether such an individual could do Morillas's past work.  AR 402.  The VE stated that though Morillas would not be able to "do her past relevant work as she performed it," Morillas could do "aspects of that job" such as waitressing, cashiering and hostessing.  AR 402-03.  But the VE opined that for a person who could only grasp, turn or twist twenty-five percent of the time, jobs such as waitressing or cashiering would be "completely eliminated."  AR 405.

Then the ALJ posed another hypothetical to the VE and asked whether a person who could only lift ten pounds occasionally, stand and walk less than two hours in an eight-hour day, occasionally stoop, kneel, crouch, crawl and climb and do no

overhead reaching could do any of Morillas's past jobs.  AR 406.
The VE stated that such a person could work "sedentary cashier
jobs" such as a check cashier, which exists in significant numbers
in California and nationally.  AR 406-07.  The VE stated that such
work would be "a little different" from Morillas's prior work, but
that skills learned at her previous job, such as banking, could be
transferred to a new one.  AR 407-10.

On December 26, 2006 the ALJ rendered a decision adverse
to Morillas.  AR 11-21.  The ALJ found that Morillas had not
engaged in substantial gainful activity since February 27, 2001.
AR 20.  The ALJ found that Morillas suffered from degenerative disc
disease of the cervical spine, chondromalacia patella, mild
degenerative joint disease of the right knee and obesity, but no
impairment that met or equaled the criteria of any impairment
listed in 20 CFR Part 404, Subpart P, Appendix 1.  Id.

The ALJ resolved conflicting medical reports and opinions
and concluded that Morillas's current RFC allowed her to perform
light work, lifting ten pounds frequently and twenty pounds
occasionally with no overhead lifting but with occasional overhead
reaching, stooping, kneeling, crouching, crawling and climbing and
sitting, standing, or walking for six hours in an eight-hour
workday.  Id.

The ALJ concurred with the conclusions of the medical
consultants Drs Nayak, Madireddi and Tambellini and ME Dr Sonka-
Maarek and rejected the conclusions of treating physicians Dr Folan
and Dr Louie.  AR 19.  The ALJ considered evidence of Morillas's
daily activities, functional restrictions, use of medication and
treatments and concluded that Morillas was exaggerating the level

**United States District Court**

For the Northern District of California

of pain she was experiencing because one would expect doctors to "prescribe stronger pain medication and/or more aggressive therapy such as surgery." Id.  The ALJ found "no objective evidence to explain the claimant's back pain." Id.  The ALJ rejected the opinions of Drs Folan and Louie because of lack of evidence, evidence of exaggeration, the assessments of the state agency physicians, the contrary opinion testimony of the ME and the appearance that they "merely accepted her complaints at face value." Id.  The ALJ stated that he was "impressed by the fact that the claimant drives herself to school, attends class for at least one hour, does her household chores; and takes a daily walk with her dog." AR 19, 115-16.

The ALJ found that Morillas "has no impairment * * * that precluded the performance of her past relevant work as a [w]aitress and [c]ashier * * * " and found Morillas not disabled at step four. AR 20-21.  The ALJ found that as part of her past work Morillas performed the duties of the following jobs:  security guard (DOT 372.667-034; cashier (DOT 211.462-010); bartender helper (DOT 312.687-010); manager (DOT 187.167-126) and waitress (DOT 311.477-018).  AR 19-20.  The ALJ found at step four that Morillas's RFC allowed her to work as a waitress and cashier.  AR 20.  But even if he did not find Morillas disabled at step four, the ALJ would alternatively have found her not disabled at step five.  Id.  He found "[e]ven if [she] were limited to standing and walking less than [two] hours in an [eight-]hour day, [she], with transferable skills, could perform the job of [c]heck [c]ashier (DOT 211.462-026), which is present in significant numbers in the national economy."  AR 21.

12

1    Morillas unsuccessfully requested review with the Appeals

2  Council and the ALJ's decision became the final decision of the

3  SSA.  AR 5-7.  Morillas timely commenced the instant action seeking

4  judicial review.

5

6                                    II

7       The court's jurisdiction is limited to determining

8  whether the SSA's denial of benefits is supported by substantial

9  evidence in the administrative record.  42 USC § 405(g).  A

10 district court may overturn a decision to deny benefits only if the

11 decision is not supported by substantial evidence or if the

12 decision is based on legal error.  Thomas v Barnhart, 278 F3d 947,

13 954 (9th Cir 2002).  The Ninth Circuit defines "substantial

14 evidence" as "more than a mere scintilla but less than a

15 preponderance."  Id.  "[I]t is relevant evidence which, considering

16 the record as a whole, a reasonable person might accept as adequate

17 to support a conclusion."  Id.  Determinations of credibility,

18 resolution of conflicts in medical testimony and all other

19 ambiguities are to be resolved by the ALJ.  Id.  If evidence exists

20 to support more than one rational interpretation, the court must

21 defer to that chosen by the ALJ.  Morgan v Commissioner of the

22 Social Security Administration, 169 F3d 595, 599 (9th Cir 1999).

23      "Disabled" is defined as "unable to do any substantial

24 gainful activity by reason of any medically determinable physical

25 or mental impairment which can be expected to result in death or

26 which has lasted or can be expected to last for a continuous period

27 of not less than 12 months."  20 CFR § 404.1527.

28      SSA regulations provide a five-step sequential evaluation

13

United States District Court
For the Northern District of California

process to determine whether a claimant is disabled within the
meaning of the Act.  20 CFR §§ 404.1520, 416.920.  First, the ALJ
determines whether the claimant is currently employed in
substantial gainful activity.  If not, then the ALJ determines at
step two whether the claimant has a "severe" impairment or
combination of impairments significantly limiting his or her
physical or mental ability to do basic work activities.  If the
claimant does not have such an impairment or combination of
impairments, then the ALJ determines at step three whether the
claimant has an impairment that meets or equals the impairments in
the Listing of Impairments, found at 20 CFR Pt 404, Subpt P, App 1.
If so, the analysis ends with a finding that the claimant is
disabled.  If not, then the ALJ determines, at step four, whether
the claimant has the RFC to perform his or her past relevant work.
If so, the claimant is deemed not disabled.  But if the claimant is
unable to perform his or her past relevant work, then the ALJ
proceeds to step five to determine whether the claimant has the RFC
to perform any other work which exists in substantial numbers in
the national economy.  20 CFR § 404.1520.


                                III

        Morillas contends that the final decision of the ALJ is
in error because the ALJ: (1) failed to render a finding on how her
obesity factored into her RFC determination; (2) erred by giving
greater weight to the opinions of non-treating physicians than to
the opinions of treating physicians without setting forth specific
and legitimate reasons for doing so; (3) erred in improperly
rejecting her subjective complaints of pain; (4) erred by posing a

hypothetical question to the VE without including all the limitations noted in the record; and (5) erred in finding Morillas "not disabled" at step four of the sequential analysis even though it was determined that she could not perform her past work as a bartender.  The court finds merit only in Morillas's last argument, which defendant concedes, but the error does not warrant reversal or remand for the reasons explained below.

A

Morillas argues that the ALJ failed to render a finding on how her obesity factored into the ALJ's RFC analysis and that such a failure is inconsistent with Social Security Ruling (SSR) 02-1p.  SSR 02-1p explains the SSA's policy concerning the evaluation of obesity in disability claims after the SSA removed obesity as a listed impairment.  It provides that disability should be found only if obesity causes musculoskeletal, cardiovascular or respiratory complications.  SSR 02-1p provides that obesity is considered a severe impairment "when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  Even though obesity is not a listed impairment, the ALJ must determine if a claimant's combined impairments equal a listed impairment.  Burch v Barnhart, 400 F3d 676, 683 (9th Cir 2005).  The claimant, however, still carries the initial burden of proving a disability.  Id.

The record does not indicate that Morillas's obesity limited her functioning.  None of her doctors indicated that her obesity was the cause of any of her limitations.  An ALJ is not

15

United States District Court
For the Northern District of California

1  required to discuss the combined effects of a claimant's
2  impairments or compare them to any listing in an equivalency
3  determination unless the claimant presents evidence in an effort to
4  establish equivalence.  See Lewis v Apfel, 236 F3d 503, 514 (9th
5  Cir 2001).  The ALJ did not err in failing to consider obesity in
6  the sequential evaluation process because Morillas failed to point
7  to any evidence of limitations attributable to her obesity.  See
8  Burch, 400 F3d at 683.
9
10                                    B
11          Morillas next argues that the ALJ erred by giving greater
12  weight to the opinions of non-treating physicians Madireddi and
13  Tambellini than the opinions of treating physicians Louie and Folan
14  without setting forth specific and legitimate reasons.  The opinion
15  of examining and treating doctors may not be rejected without
16  "specific and legitimate" reasons supported by substantial evidence
17  in the record, and the uncontradicted opinion of either may only be
18  rejected for "clear and convincing" reasons.  Lester v Chater, 81
19  F3d 821, 831 FN2 (9th Cir 1995).
20          The ALJ provided "specific and legitimate" reasons for
21  rejecting the opinions of the treating physicians in favor of the
22  opinions of the non-treating physicians.  The ALJ rejected the
23  opinions of the two treating physicians because of a lack of
24  objective evidence, evidence of exaggeration, the assessments of
25  the state agency physicians and the contrary opinion testimony of
26  the ME.  AR 19.  The ALJ considered, along with the objective
27  medical evidence, evidence of Morillas's daily activities,
28  functional restrictions, use of medication and treatments

United States District Court
For the Northern District of California

prescribed in determining that Morillas was exaggerating her level of pain and that her treating physicians "merely accepted her complaints at face value." Id. The ALJ also relied on the expert testimony of the ME in finding that the objective evidence did not support Morillas's complaints. Id. Substantial evidence supported the ALJ's reasons for favoring the opinions of the non-treating physicians over those of the treating physicians.

C

Morillas next argues that the ALJ erred in improperly rejecting her subjective complaints of pain. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell v Sullivan, 947 F2d 341, 344 (9th Cir 1991). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Smolen v Chater, 80 F3d 1273, 1282 (9th Cir 1996). Next, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to the credibility and stating clear and convincing reasons for each." Vertigan v Halter, 260 F3d 1044, 1049 (9th Cir 2001). But if a claimant "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a

work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." <u>Morgan</u>, 169 F3d at 600.

The ALJ stated that he was "impressed by the fact that the claimant drives herself to school, attends class for at least one hour, does her household chores; [sic] and takes a daily walk with her dog." AR 19, 115-16. The ALJ also determined that if Morillas's pain was as severe as she claimed, one would expect her physicians to "prescribe stronger pain medication and/or more aggressive therapy such as surgery." Id. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." <u>Burch</u>, 400 F3d at 681. Morillas testified that she only took 800 milligrams of ibuprofen for pain and pentazocine lactate once a day at bedtime or during episodes of greater discomfort, which occurred three or four times a month. Like the ME, the ALJ stated that he thought that there were "signs of exaggeration." AR 19, 397. Based on the evidence, it was reasonable for the ALJ to infer that Morillas was exaggerating her pain. The ALJ's reasons for rejecting Morillas's pain testimony were sufficiently supported by the evidence in the record and set forth in proper detail.

D

Morillas next argues that the ALJ erred by posing hypotheticals to the VE that did not include: 1) limitation in performing repetitive hand motions and 2) side effects caused by the medications Morillas was taking. The ALJ asked the VE whether an individual with the same education and vocational background as

**United States District Court**
For the Northern District of California

Morillas who could "do light work with no overhead lifting, no
overhead reaching, occasional stooping, kneeling, crouching and
crawling, and occasional climbing" could perform Morillas's past
work.  AR 402.  A hypothetical posed by an ALJ must consider all of
the claimant's limitations.  <u>Magallanes v Bowen</u>, 881 F2d at 747,
756 (9th Cir 1989).  But when there is no clear objective medical
evidence of an impairment, the ALJ need not include that impairment
in hypotheticals if the ALJ determines that the claimant is not
credible and provides specific reasons justifying his or her
decision not to find the claimant's testimony about alleged
impairments credible.  <u>Thomas</u>, 278 F3d at 959-960.

        The record contains inconsistent findings on Morillas's
wrist impairments.  While Dr Folan indicated that he thought
Morillas had significant limitations with reaching, handling and
fingering, Dr Louie indicated that he thought Morillas had no
significant limitations with reaching, handling and fingering.  AR
343, 348.  Dr Tambellini noted no limitations in handling or
fingering.  AR 254.  Dr Sonka-Maarek stated that she thought it was
questionable whether Morillas actually suffered from CTS.  AR 390.
The ALJ provided several reasons mentioned above for rejecting the
opinions of Drs Folan and Louie, who themselves had conflicting
opinions.  Because the evidence did not clearly indicate that
Morillas had difficulty reaching, handling and fingering, the ALJ
did not err in omitting such difficulties in his hypothetical.

        The ALJ also did not err in omitting the side effects of
Morillas's medications in his hypothetical.  When a claimant never
raises complaints with doctors, the ALJ is not obligated to include
those complaints in hypotheticals.  See <u>Greger v Barnhart</u>, 464 F3d

United States District Court

For the Northern District of California

968, 973 (9th Cir 2006).  Morillas did not complain to her physicians that her medications made her drowsy or interfered with her functioning; the ME did not mention that Morillas's medications negatively affected her, only that they "do cause cognitive side effects."  AR 397.  Absent medical evidence that Morillas suffered side effects from her medications, however, the ALJ did not err by omitting them from his hypotheticals.

E

Finally, Morillas argues that the ALJ erred by finding her "not disabled" at step four of the sequential evaluation, contending that the evidence established that she was capable of performing only some, but not all, aspects of her past relevant work.  The ALJ properly found that Morillas could work as a waitress or a cashier.  AR 20.  But because Morillas could not perform her past relevant work of bartending, the ALJ should not have found that Morillas could perform her past relevant work at step four.  20 CFR §§ 404.1520.  Defendant concedes this point.

The ALJ, however, properly determined alternatively at step five that Morillas could perform other work, namely waitressing and cashiering.  AR 21.  After determining that a claimant cannot perform past relevant work, the ALJ is "free to consider * * * the skills which the claimant has previously developed in order to determine whether the applicant is able to perform other available work."  Valencia v Heckler, 751 F2d 1082, 1087 (9th Cir 1985).  A mischaracterization of past relevant work is harmless when a claimant can perform other work.  Brawner v Secretary of Health and Human Services, 839 F2d 432, 433 (9th Cir 1988).

20

1

IV

2       Because substantial evidence and correct legal principles

3   support the ALJ's decision, the court DENIES plaintiff's motion for

4   summary judgment (Doc #20) and GRANTS defendant's motion for summary

5   judgment (Doc #21).

6       The clerk is directed to enter judgment in favor of the

7   defendant and to close the file.

8

9       IT IS SO ORDERED.

10

11

    _____

12  VAUGHN R WALKER
    United States District Chief Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

21